UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                           PLAINTIFF

v.                                                                       CRIMINAL ACTION NO. 3:16-CR-136-CRS

DANNY COSLOW                                                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendant, Danny Coslow, *pro se*, seeking a reduction of his term of imprisonment. Coslow served a prison sentence for mail fraud and money laundering crimes, then began a term of supervised release. After committing a number of violations, his supervised release was revoked and Coslow was sentenced to serve one year and one day for those violations. He is currently in the custody of the United States Marshals Service ("USMS") and is housed in the Oldham County Detention Center ("OCDC") awaiting Bureau of Prisons ("BOP") designation and transfer to a federal facility. All transportation to BOP custody has ceased temporarily due to the COVID-19 pandemic and statewide efforts to avoid further transmission of the virus.

Coslow has filed two motions, one styled "Emergency Motion to Reduce Sentence" (DN 254) and one styled "Motion to Modify Revocation Judgment" (DN 256). They both seek compassionate release under the provisions of 18 U.S.C. § 3582(c) and recite the same bases for the request.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]"

Coslow is not yet in the custody of the Bureau of Prisons. He would be, but for the present state of suspended animation. Coslow thus has no warden to whom he may petition for compassionate release, yet he remains confined and serving a federal sentence.[1]

The defendant's situation is described by Lewis Carroll in "Through the Looking-Glass"[2]:

> "You couldn't have it if you *did* want it," the Queen said. "The rule is, jam to-morrow and jam yesterday – but never jam to-day."
>
> "It *must* come sometimes to 'jam to-day,'" Alice objected.
>
> "No, it can't," said the Queen. "It's jam every *other* day: to-day isn't any *other* day, you know."

The defendant is in the custody of the United States Marshal, having been sentenced by the undersigned but not yet transferred to the Bureau of Prisons. The BOP has therefore not brought a motion on the defendant's behalf to reduce his term of imprisonment, and it cannot do so, and it will not do so, because there is no dispute that the defendant is not in the custody of the BOP. Since under these circumstances he cannot exhaust any administrative rights to appeal inaction by the BOP, we will find that he has exhausted all the administrative the rights he, at this time, doesn't have.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the

---

[1] See *United States v. Van Dyke*, No. 2:15-CR-0025-JLQ-1, 2020 WL 1811346, *2 (E.D.Wash. April 8, 2020)("The Court finds that Defendant has effectively exhausted his administrative remedies as he does not have any administrative path or remedies he can pursue…Defendant is not in the custody of the BOP. Therefore, there is no warden to petition…Any attempts to exhaust administrative remedies would be futile. Accordingly, Defendant's Motion for Reduction of Sentence is properly before the Court."). See also, *United States v. Hernandez*, No. 18CR-834-04 (PAE), 2020 WL 1684062, *2 (S.D.N.Y. April 2, 2020)(BOP Assoc. Gen. Counsel' statement that because defendant was in the custody of the United States Marshals at a private facility, not in the custody of the BOP, the BOP "cannot evaluate him for compassionate release and will not be seeking a motion for compassionate release on his behalf at this time."); *United States v. Carver*, No. 4:19-cr-06044-SMJ, 2020 WL 1892340, *1,*2 (E.D.Wash. April 8, 2020)(Defendant's motion for reduction of sentence found to be properly before the court, upon noting "The 'futility exception' relieves a party seeking relief from being required to first 'pursue an administrative review that is demonstrably doomed to fail," and that "the record makes clear there are no 'agency processes' with which a ruling from the Court could interfere.").

[2] Lewis Carroll, *Through the Looking Glass*, *and What Alice Found There,* Chapter 5 "Wool and Water" (1871).

applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3,[3] the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

---

[3] "While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g., United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider."
*United States v. McGraw*, No. 202CR00018LJMCMM, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019).

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Coslow has not articulated a circumstance under U.S.S.G. § 1B1.3(A)-(C). He alleges an "other reason," the COVID-19 pandemic, as the sole ground for his motions. He states that "I am only asking the courts for a modification due to the unexpected COVID-19 outbreak." DN 256, p. 3. He contends specifically that the OCDC is "unsafe" due to the COVID-19 outbreak and that his father who resides in a nursing home "is even more susceptible to a COVID-19 outbreak." DN 254, p. 2.

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[4] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[5] As of the date of this writing, there are 3,917,366 confirmed cases worldwide and 274,361 deaths; in the United States, there are 1,245,775 confirmed cases and 75,364 deaths.[6] Further elaboration concerning the health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons, is unnecessary. Suffice it to say that the

---

[4] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at- the-media-briefing-on-covid-19---11-march-2020).

[5] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring- national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[6] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited May 10, 2020).

court addresses motions for compassionate release, and Coslow's motion in particular here, with the gravity of the situation in mind.

With respect to the specific concern that Coslow faces the potential for infection with the COVID-19 virus in the OCDC, the Court has been apprised of particular steps implemented to counter the emergence of the virus there and to contain any spread within the facility. OCDC has implemented the following steps to counter the COVID-19 virus: (1) all employees and inmates are monitored for symptoms of respiratory infection; (2) all new inmates are screened by medical personnel for signs of respiratory infection and appropriate infection prevention practices are implemented; (3) visits by non-essential personnel are suspended; (4) inmate visitation is suspended; (5) attorney/client meets are being held by video conference or "through the glass" meetings; (6) "clean teams" have been designated and provided personal protective equipment and supplies to disinfect high traffic areas; (7) hand sanitizer stations have been established and remain fully stocked; and (8) symptomatic individuals will be isolated. (DN 44, at PageID # 180). *See, United States v. Stephenson*, 3:20CR-18-CRS, DN 49, p. 4, *aff'd*, DN 58. Coslow urges that he is at risk because OCDC's procedures are, in his view, inadequate. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…" *United States v. Rushton*, No. 4:18-CR-329, 2020 WL 2104554, at *2 (N.D. Ohio May 1, 2020). We note that the steps taken by OCDC have, so far, been effective in protecting their population. There are no reported cases in that facility as of the date of this writing. Further, Coslow does not contend that he has any medical condition that leaves him more vulnerable to serious illness from the COVID-19 virus than other inmates. Thus, Coslow has failed to articulate an extraordinary and compelling reason why he should be granted compassionate release.

Additionally, Coslow's concern for the well-being of his father confined to a nursing home, while certainly valid, is a universal one not solved by nor justifying compassionate release. U.S.S.G. § 1B1.3(C) does not contemplate compassionate release for family circumstances beyond those specifically delineated. Additional familial relationships and responsibilities therefore do not constitute an "other" extraordinary and compelling "reason" under § 1B1.3(D), as such an application would not be consistent with the policy statement of the Sentencing Commission.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motions of the defendant, Danny Coslow, for compassionate release (DNs 254, 256) are **DENIED.**

**IT IS SO ORDERED.**

May 13, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:   Counsel of Record

      Danny Coslow, *pro se*
      Oldham County Detention Center
      3405 W. Highway 146
      Lagrange, KY 40031